that the manual on its face covers him. Yes, Your Honor. But they didn't apply the manual to him. Yeah, they did not do so correctly. The Board of Veterans' Appeals and the court discussed inside of the manual and they didn't follow it. But how can you call the manual a substantive rule of law or a substantive provision when we said in Gray that they're not, at least for purposes of review? In Gray and in DAV, those were direct rule challenges. So it's a different context than this. And Gray, at least in our reading of it, Gray and DAV leave the door open for precisely this kind of challenge, that it is a substantive rule. This does have the force and effect of law. It's different than what the court found to be interpretive rules in DAV and in Gray, because both of those provisions were interpreting existing regulations and statutes and were found to be interpretive. We're arguing in this case that it's different. Because there's nothing on point for Thailand veterans and because this is VA's stated policy, not only in the M21 but in the other places cited in our pleadings, that this is VA's policy on the matter. And because it creates a substantive right, the M21 does in fact control here and does bind VA. There does not seem to be any contention, and I don't want to put words in VA's mouth, but I'm not reading any contention that VA adjudicators at the regional office level are bound by the M21. And because it is a substantive rule, the board should be so bound as well, just because it's found in the M21. But I thought you conceded in your brief that it doesn't bind the board. The M21 writ large does not bind the Board of Veterans' Appeals. But a substantive rule can still be found in the M21. It can be placed in there. The M21, DAV and Gray stand for the proposition that the M21 doesn't bind the board, and that's based on some regulatory authority. The rationale of it does, even though the manual doesn't itself bind, what is the binding nature? I'm sorry, Your Honor. The fact that this is a substantive rule, the fact that this is VA's policy pronouncement, because this is the only place where it's found. The policy is embraced in the rule, right? I'm sorry, Your Honor. The policy is embraced in the terms of the manual, the presumption that's created in the manual? Essentially, yes. It's not quite a presumption. Does it matter? Doesn't the presumption created in the manual deal with having been assigned to duty at the perimeter? It does. It follows through the... Wasn't there a fact finding that your client wasn't assigned to duty at the perimeter? That was not... That fact finding... I don't believe so, Your Honor. The facts in the case... I thought the facts were that your client was at the perimeter walking around or from time to time, but his assignment, his duty assignment station was that he was not assigned at the perimeter. And that's the nub of the case, Your Honor. That's the heart of the case. That was a fact finding that he was not assigned to the border. In order to earn the presumption under the manual, you'd have to be assigned at the perimeter. But that's not what the Veterans Court found. The Veterans Court found him competent and under the provisions of... Placing him physically being at the perimeter as opposed to assigned to duty. Presumably, some people were assigned to patrol the perimeter or go out and spray the weeds at the perimeter or whatever. Yes, Your Honor. That's all found in the M-21, but the M-21 is more than that. The M-21 provision says that on a facts found basis, if a Thailand veteran puts himself on the perimeter, which Mr. Hudick did... Another fact that stuck in my mind was the fact finding that none of the relevant chemicals were ever present at this base at the time your client was assigned there. Your Honor is referencing the archivist's report from 2014. And that was the nub of the archivist's report, correct? The archivist's report does have a sentence in there in his email that says that herbicides were not sprayed at Udorn until 1969, which postdates when Mr. Hudick was there. However, that's contrary to VA's policy. VA's stated instruction in the M-21 concedes herbicides. Remains, I see. It concedes herbicides were used... So the manual starts at 1961. I'm sorry, Your Honor. The manual starts at 1961. Yes, it contemplates the entire Vietnam era, which does cover Mr. Hudick. So as I understand it, the dispute here is not whether he would fall within the terms of the is binding on the VA or on the board. The dispute is... Yes, Your Honor. He unquestionably falls under the manual. That is what we are saying. And that the manual does, it binds the board or at the very least, Your Honor, it binds the adjudicators at the regional office level, of which I don't believe. Again, I don't believe there is a dispute. And if it binds the adjudicators, it puts Thailand veterans into a bit of a bind. Because the only place that VA has announced the policy of how they're going to really deal with Thailand veterans is in this M-21 provision on its website, consistent with the Chico report. And because that's the only place, and because it does, again, Your Honor, as we say in our briefs, satisfy the test laid out for what constitutes a substantive rule, it should bind the board. And it constitutes a substantive rule because it's the only place... It's the... This is the only place that the policy of the VA as to how they're going to treat these veterans is set forth? I would say that's the strongest point for it being a substantive rule. All right. What other points are there for it being a substantive rule? Well, going through the agency... The three-part test contemplates the agency's characterization of the action, whether it's contemplated in the federal regulations and whether it has binding effects. To Your Honor's point, it all stems from that. From the fact that this is the only place where it is announced. But it does bind. And the fact that step one is irrelevant because it's not published in the federal register, but that's not fatal to the test. Just to be clear, is your view that if the manual is binding, there are no remaining questions raised by the government? Well, my view is that the government... In fairness, the government tried to throw this into a weighing of evidence type of question, but that's not how... Yes. Right. Yes. That is pervasive in the argument. Right. And I know that they will speak more to that, but this is not a weighing of the evidence case because the substantive rule, as Judge O'Malley points out, is the only place where the Thailand provisions are found and should be the end of the matter. There should not have been this further development. Once he met the M21's requirements, which he does when he credibly placed himself in Thailand during the relevant time period, that should have been the end of the matter. That's our contention. Yes, Your Honor. Okay. I have that. All right.  Thank you, Your Honor. Mr. Yale? May it please the court. First, I'd like to address the issue of whether or not this is a substantive rule. There's really no daylight between the provision here and the provisions in DAV or Gray. When you go through the three-part test, it's the same analysis. The VA's characterization of this manual provision has always been that it's not binding. There is never a notice and comment here. What's the point of such a rule if no one need follow it? Well, it's essentially a factual shortcut for the initial agency decision makers. It's informal guidance to those decision makers when they're getting claims in that they can look at this manual provision and see that, for example, if you held certain positions on these Thailand Air Force bases, that the government should concede exposure. But we think that the DAV and Gray are very similar in terms of the analysis as to whether or not this is a substantive rule. Well, part of my problem is that with DAV and Gray, the government argued it's not a You can't challenge it. You can't challenge the rule on its face and said, but it's okay because if there's any concerns about the rule or the application of the rule, that can be addressed in an individual case when the manual is actually applied to an individual. That's what we have now. Sure, Your Honor. Well, you can make a 7292 challenge to a particular portion of the manual. But here, the petitioner is not saying that we should strike this rule as being contrary to law, this provision. In fact, that would not help Mr. Hudik in this case. What he's saying is that we're okay with the manual provision for Thailand veterans. We just want the VA to be applying it in a manner more favorable to Mr. Hudik. Well, in a manner that is consistent with it on its face. That's not what he's saying. He's not saying, I want a better version of the manual. He's saying, I want the manual. Correct, which involves the way, which goes back to that involves the weighing of evidence. As we laid out in our brief.  We did, in fact, argue that we argued that the VA followed the manual. Even though it's non-binding, the VA followed the manual provisions and it found that he didn't hold the positions of a dog handler, security individual. But it found that there was, in fact, credible evidence that he served at the perimeter. Well, the VA actually found that the evidence and the board looked at it and found that actually when you weighed all of the evidence, the evidence, the lay evidence was outweighed by other evidence, including the records finding that Mr. Hudik did not have his duties regularly served on the base perimeter, as well as the factual finding concerning herbicide exposure, that there was no spraying of herbicides. Well, that part on its face is inconsistent with the manual, right? Well, correct. The manual says 1961 to 1974. But it's not inconsistent in that there was uncertainty as to whether throughout all of those bases there was spraying on a particular base. When you go through the manual- Well, that's what the whole purpose of a presumption is, right? Well, that is correct. If there was a statutory presumption or a presumption based upon a regulation. That's not what this is. This is based on direct service connection. It's trying to get to the point of whether or not a veteran was exposed to herbicides. And the manual provisions, while- We can debate whether the manual is binding. What I'm having a problem with is when you tell me that 1961 to 1974 is presumed covered, and now you say, but you know what? We only have to start it at 1969 and that that's somehow consistent with the manual. That's my problem. I think we can debate whether the manual is binding. But the manual says what it says. Correct. The manual says what it says. But again, as we pointed out in our briefs, if you follow through the manual questions, if you don't hold these certain positions and if the evidence demonstrates that you which is what actually happened here. There was- They reached out to the record center and the record center provided records regarding these issues. If you look at, for example, Joint Appendix 100 and 101, the Joint Record Center provided facts and that's based upon the fact that while the manual was not binding on the board, the VA still followed the provisions of the manual and the board in its analysis, in its opinion, still went through the analysis there. So even if for some reason, the court were to find that the provision is binding, which there's a regulation saying these manual prisons are not binding. The VA has never treated this as binding. There still was no error here. And so even- I'm still having a hard time. The board found his evidence of service near the perimeter to be credible, correct? He's- Correct. Right. And the manual says if credible evidence establishes service near the perimeter during this entire timeframe, then we presume exposure. So why are we going to these other sources of data if the manual says don't do it? Well, because I don't think the manual says, as long as you have one credible piece of evidence, you automatically stop there. They were weighing all of the evidence of record and that's consistent with the VA's- In terms of the weighing of that evidence, what happens to your case if we take the fact that the herbicides weren't found there until 69, if we take that fact out? Well, I mean, we- So that should not disappear. Well, I think it gets to the same- It's still weighing of the evidence because- What then would there be in the record to show that the RO and the BVA properly applying the regulation came to the correct conclusion? Well, because they went back and the joint records office looked at it and found that the records demonstrated that Mr. Hudick's position did not have him regularly operating on the perimeter, the only piece of evidence- What if we don't go to step two? Because it sure looks like step one is supposed to be the end of the inquiry. So what if we conclude that going to step two was neither appropriate nor necessary? So that the manual says what it says, he falls within the bounds of the manual, and relying on evidence to undercut the manual itself isn't consistent with the manual. So then where are you? Well, even if there is error there, I mean, this is the VA, this is the board who is looking at it de novo. And even if there was an error there, it would be an error in applying a non-binding provision. But does the manual bind the regional adjudicators? Well, I think they are supposed to follow the manual provisions. Okay. So why wouldn't the board then remand to the RO to apply the manual? Well, again, I mean, I don't think, as I stated before, I mean, the manual is non-binding. So it's binding on the adjudicators? Well, the initial adjudicators, this is a manual of informal guidance for the VA, factual shortcuts, for example, here to see whether or not an individual is exposed to herbicides. But to basically just give clarities and then say, we're not going to require all this other digging and all this other evidence if there is a presumption, right? Well, right. Well, this is, it's a factual shortcut to see whether or not the veteran has demonstrated exposure to herbicides. But it was never, the VA has never meant these provisions to bind the board or bind any tribunals. I mean, that came up in Gray, I believe, as well. There was, it's never meant to bind the VA when it goes forward in any sort of... If the adjudicators are bound by it, how could the board say that their adjudication was correct based on the procedures they're supposed to follow? Well, I guess, as I mentioned before, I mean, I think that it's informal guidance. They're supposed to follow it. But if they don't follow it, based upon 38 CFR 19.5, it's not binding on the board. I think in Gray and the DAV decisions, it's been found that these manual provisions were never intended to bind anyone in terms of other tribunals. And that's part of the reason why they were found not to be substantive rules. They were, I mean, those were essentially the holdings in those cases. And part of the rationale was it was only supposed to be guidance for the informal decision makers. And if there is an error there, if an initial agency decision maker reached the wrong conclusion, it could go to the board here. There's a bill pending in Congress that would say that the VA is going to give presumptions to anybody who worked in Thailand during the Vietnam era. It needs to give a presumption to everybody who was in Thailand during the Vietnam era. And the VA has opposed that. Is that right? Well, Your Honor, I actually, I have heard of the bill. I'm not, I don't have knowledge whether or not VA has opposed that or not. I would say that part of VA's policies on both herbicide exposure and spraying is to find what the scientific evidence demonstrates. But isn't, so in other words, this manual was adopted, the VA is saying, we're not going to require all of that. We're not going to look into it. We're not going to and wants to be stricter. I mean, why not pull the manual? Why not rewrite the manual rather than just say, we don't follow the manual? Well, I mean, if for example, this was found to be a substantive rule, I guess there's an argument that the manual provision did not go through notice and comment rulemaking. And then the provision would, I would think, be struck. But again, that would not help in this case, because then you would just go back to whether or not he can demonstrate exposure to herbicides on a direct basis. So he really has to be relying upon this manual provision because there's nothing else that he's been pointing to. I know in his briefs, he pointed to the Dioxin Act, but that clearly on its face does not cover individuals who served in Thailand. And why wouldn't veterans feel that they could rely on a manual that on its face covers their circumstances? Well, I mean, part of it could be if to the extent veterans have representation or, you know, there's been several cases that have said that these are really, it was never supposed to be, have the binding effect of law on it. So if you take a take a case in which there's no question about the veterans satisfying the precise requirements of the manual, and it would seem to me that in the past, a veteran who showed up at the RO and said, I was assigned at the perimeter, et cetera, et cetera, et cetera, that he was got relief. Well, the RO is doing this job, and it's, and it is supposed to apply the manual, and a person shows up who squarely no question about it, no question about whether he was the, properly assigned, he would assume that the RO would grant the benefit that was being requested. I mean, at least he had the service connection, right? That's correct, Your Honor, and I think that happens in many cases. There's a class of veterans out there, putatively at least, who have marched to the RO, walked in, been told, been told by the RO that there is this manual, because that's the job of the RO is to be veteran friendly, and said, oh, yes, you satisfy, you get the presumption of service connection. Well, and then you take this case comes along, and this veteran comes in and goes through that procedure, and there's some question about whether or not he was served at the perimeter. That seemed to be the only, isn't that the only question about his satisfying the terms of the manual? Well, no, because as to the first, as to the first question, that's correct. It was, he clearly did not meet, he was not a dog handler. No, that's why I walked through, so he comes into the RO, and the RO would say, has some questions, and in this case, they would deny him his service connection because he wasn't, his duty assignment wasn't to patrol the perimeter. As well as, there's. I just, I want to nail that down. Sure. Was there any, would there have been any other ground on which his application would have been denied? There's a general category, so he clearly doesn't meet the positions, but there's a general category if he can show that he was regularly on, his duty was regularly on the perimeter of this Air Force base. Okay. Which is, I think, what a lot of the dispute here is, there's no dispute whether or not. I just want to nail down the perimeter, if there's anything other than the perimeter. Well. That would disqualify him for the presumption at the RO. At the RO stage, if he had demonstrated that he had regularly served on the perimeter. I'm going to take the perimeter out, I want to ask, is there something else, like he had to wear blue clothes, or he had to have, be there two hours, or something, some other totally different category? Well, there's obviously the time period which he met, but as for that first prong, no, you're correct. Only, the reason why I'm asking this is that there is, as I understand it, the BVA gave credit to his testimony that he was at the perimeter. They found him, the board found him competent to say that he was at the perimeter. Not just competent, credible. Okay, correct. And then they looked at other evidence, and they weighed all of the evidence. I don't want to talk about that other evidence. Okay. See, the other evidence you're going to talk about is that, well, there were no chemicals there until 69. I'm going to take that totally out of the equation. What I want to know is whether there's any other factual data point against the veteran, other than the fact that he didn't have the service at the perimeter. Well, it's... Sure. The other factual data point was not specifically on, I guess, I think they looked at the unit records to determine where, sort of, on the base these individuals were. And they didn't find that they were regularly on the perimeter in his unit. And they also found... But then what I want to come back to, this sort of begins to turn on the quality or the weight that's given by the BVA and by us in assessing the fairness of the adjudication to the veteran's testimony that he was at the perimeter. And so that seems to me that that's an adjudicatory fact at the BVA that seems to be overriding the opinion of the RO. On the placement at the perimeter issue. Am I wrong? Well, I'm not sure that you're wrong, but I also don't think that this court under 7292 can really go back through and reweigh the evidence as found by the board. Let me ask you something. Whether the policy was formal or informal or binding or not, does that matter for due process purposes? I would think it would matter. I'm not sure how an agency not following a non-binding provision could be a due process violation. And I might add, as we laid out in our briefs, I mean, we do think that they actually, the VA actually went through and followed the policy. But you have the board as well as the veterans court who can look at these issues. And due process only really requires notice and an opportunity to be heard. Mr. Hudick has had an opportunity to be heard on these issues. You want us to say as a matter of law, as a matter of judicial ruling, the secretary, the VA can ignore in its procedures at whatever stage, whatever it states in the manual. Well, I think under a 7292 challenge, you have to look at the particular manual provisions. The answer is yes. We tell the world that the secretary is, the VA is not bound by what it states is its policy. Forget it. Well, I wouldn't exactly put it that way, but I take your point. But isn't that where you were taking us? Either it's binding or it isn't. Well, I think in DAV and Gray, they certainly said that these provisions are not binding. And I think that there's a regulation stating that they're not binding. We didn't say they're not binding. We said the VA claims they're not binding. And we said in those circumstances, you can't do a pre-application challenge to those provisions. But we never said what the implication of the VA's position on it being non-binding was other than for that purpose. Sure. And I think in those cases as well, there has been left open the possibility of individual 7292 challenges to a particular manual provision. And to the extent that the VA is, has implemented a manual provision and refuses to follow it. And for example, that violates a statute. Say, for example, it actually violated the Dioxin Act. I mean, there could be a 7292 challenge. And essentially striking that manual provision as violating the constitution or violating another statute. But that's not, again, that's not what we have here. But the VA is not going to challenge its own manual. So you're saying is if the manual really is inconsistent with a statute, then a veteran can challenge it. But the real question here is assuming that no veteran wants to challenge it, the veteran actually wants to do is get the benefit of it. But you're saying that in those cases, there's no way to say that the VA should actually, even as a matter of procedural fairness, follow its own policy. Well, again, because at least for this manual provision, the ones in DAV and Gray, I mean, they are non-binding. I mean, there's ways to get at a Thailand presumption for veterans. Congress can, for example, implement a new statute. So why did the VA establish this presumption, Thailand presumption for veterans? I mean, the whole point was that Congress was too slow in doing it. And that the VA, which is veteran friendly, felt that they should just go ahead and create one. And they did. So then you create one, but you don't apply it. Well, again, I think we dispute that it was not applying this case. But it was created because they were receiving many applications from veterans who served in Thailand. And so they implemented this manual provision as informal guidance for the initial decision makers because they were receiving so many applications in for benefits. And so that's, I think, and they were trying to get at with the manual provisions, where, you know, dioxin and those chemicals are sprayed. We have a line of cases, I think, that I know that say that a misapplication of a regulation is itself a question of law. You know, those cases came up. We have this problem that you referred to earlier that we can't review a factual determination. But isn't this a case in which we could decide that there was, if we decide that the manual has some applicability to the decision of this case and that it was the guiding light for the IRO and that the BVA was actually looking at this case as to whether or not there was satisfaction of the manual's requirements. And we conclude that there was a misapplication of that rule by the BVA in its decision that this gentleman wasn't entitled to the benefit of the regulation. Well, there are a line of cases involving misapplication. I'm just trying to be, what came to me in the way of the argument, and when I quickly look back at how the CAVC was looking at this decision, it did begin to look like there was a question of trying to decide whether this veteran had satisfied the requirements of the manual. Well, correct. If he had, he would win. And it seemed to me that as a result of our discussion here today, if the fact that the chemicals weren't put on the ground until 69 or whatever well after the date of the manual's applicability, if that fact comes off the record, all that's left seem to be whether or not this veteran was at the perimeter. And if he was at the perimeter, he would win. Under the manual, which would elide the question, the difficult question for us as to whether or not this manual is binding, all of the decision makers here treated the manual as something under which this veteran would prevail had he satisfied the terms and conditions of the manual. You've in essence said that yourself, haven't you? Well, that's the way this case was served up. This case wasn't served up as a binding regulation that binds. That whole question that we've been deciding here is in the ether as we look at the problem. I'm looking at what was actually happened in this case. The veteran went to the RO, asked for relief, must have been told that there was a manual presumptive coverage that he might or might not be entitled to. And there only seems to be one data point on which he failed. And if that data point is wrong, wrong, wrong, wrong, then there was a misapplication of the prevailing regulation would be an error of law and we could review that. But with all due respect, what is the regulation that we're reviewing? This non-binding manual provision? It's a process that at least for purposes of this case, which is what we're trying to decide this exact case, not larger case. For purposes of this case, the agency chose to strap the manual on its own back. You've said that. You said this is a question of whether or not he satisfied the manual and the facts show he didn't satisfy the manual. Well, I mean, I think we made other arguments in this case. But I mean, the purpose of the oral argument is to sort of bore down and find out if there is a reversible error. Correct. And again, I think when it comes down to it, it is even if you get into the manual provision, it's really a weighing of the evidence. The board in its decision said that these facts were established that he did not have regular service on the perimeter. I mean, I take it that there is a disagreement with that. But I'm not sure how the court gets around that fact as well as the fact of when this entire provision is trying to get at who was exposed, which veterans were exposed to herbicides and research was done finding that they were not used on these bases until 1969. I mean, what may be coming out is that the manual provisions are over-inclusive and may be providing benefits to more veterans than perhaps the science shows. But that doesn't really change the issue here as applies to Mr. Hudak. I think we have the position. Thank you, Your Honor. Thank you. Mrs. Jones. Your Honor. Can you address the question of being at the perimeter? Now, the manual just says other credible evidence. You say the board found his evidence credible, but the government argues that there was contrary evidence, and so the board had to weigh it. And so he didn't really have other credible evidence, I guess, is their point. There's no question that he was on the perimeter because he credibly and competently placed himself there. I think that to Judge Clevenger's point... But did the board... Is that the conclusion the board made? I know they said he was credible. I know, Your Honor, that when the board found him competent and credible to place himself at the perimeter, that's when he met all the requirements of the M-21 provision. The discussion of it... What's the manual specifically say about at the border? You have the language there in front of you? I do have the M-21 right in front of me, Your Honor. What's it say about the border? It's as my opposing counsel pointed out, this factual shortcut, which I think strengthens Mr. Hudick's case because this is what the man should do, and that's how it's laid out. So step one, did the veteran serve in the Air Force in Thailand during the Vietnam era? Yes, he did. Did he serve at one of the following Royal Thai Air Force bases? On the list is Udorn. He did. As an Air Force security policeman, no. Was he a dog handler? No. Was he a member of a police squadron? No, he was not. Those are things that the board, I believe, did take into consideration, but otherwise near the base perimeter, as shown by evidence of daily work duties, performance evaluation reports, or other credible evidence, he credibly placed himself on the perimeter. If yes, which he did, concede herbicide exposure on a direct facts found basis. My question is, at this other credible evidence stage, can you weigh his credible evidence against other evidence? Or do you have to just stop the minute you have some credible evidence? Once he puts himself in the end, and that's what 1154A speaks to. Well, doesn't the word or answer that question? If you say, that's why I wanted you to read the business about service at the perimeter. It said, as shown by his bill of assignments, et cetera, because the military gets very specific assignments, right? Yes. And so in this particular case, there were no specific assignments saying he had to go to the border. Yes. But it says his border presence can be shown by A, B, C, or D. Yes, Your Honor. So if it's not shown by A, B, or C, then the fact that it's not shown by A, B, or C would seem to be irrelevant if it's shown by D. Yes, Your Honor. That would seem to me to be your argument? Yes, Your Honor. What I said earlier, I would think you'd be arguing now that if that's the case, and the only evidence in the record about presence at the border that is going to amount to something is his, because the fact that there was no record of A, B, or C is irrelevant if you satisfy or then there has been a misapplication by the RO and the BVA of the law they chose to strap on themselves for purposes of deciding this case. Yes, Your Honor. And if we see the case in that perspective as served up, which seems to be the way the court is treating it, it elides the difficult question of whether or not the pronouncement without notice and comment rulemaking constitutes a binding rule of law for all cases. Yes. You don't need to decide that. Whether you need to decide that? No, you don't need that. We don't need to decide that the manual is a binding under all circumstances for everybody. No, you do not need to decide that, Your Honor. Because I find that a very difficult issue, and it's a potential problem. For example, if the only time you ever heard something said was by the assistant secretary at a speech in California when he was trying to be generous to veterans, does that automatically become a binding rule of law because it was the only place that that policy was ever mentioned? It seems to me to be troubling. I understand that, Your Honor, and Your Honor can decide this on narrower grounds. Judge O'Malley, I'm sorry. Did that answer your question? I want to make sure that I direct. Yes, I think so. Okay. Because the manual provision amounts to something, and because Mr. Hudick does meet all the requirements that VA stated in what opposing counsel just called its factual shortcut, the Veterans Court's decision should be vacated. Any more questions? Any more comments? Vacated? Should be. I'm sorry. The Veterans Court's. I'm sorry, Your Honor. The Veterans Court's decision should be reversed. You're not asking for another bite of the apple downstairs. No, the Veterans Court's decision should be reversed. Thank you. Okay. Okay. Thank you. Thank you both. Case is taken under submission.